### ALBERT BOOTH COHN CO. v. LEE et al.

(Supreme Court, Appellate Division, First Department. June 11, 1909.)

1. BROKERS (§ 51*)—COMPENSATION—SERVICES OF BROKER.

   A broker is not entitled to commissions, where he merely voluntarily introduced a person, who made an offer for the property, which was rejected, though the same person subsequently purchased the property through negotiations with other persons.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 69; Dec. Dig. § 51.*]

2. BROKERS (§ 86*)—ACTION FOR COMPENSATION—EVIDENCE.

   Evidence held insufficient to show any agreement to pay plaintiff commissions for the sale of property, or that plaintiff rendered services in the sale of the property of which the owner had knowledge and accepted.

   [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 116; Dec. Dig. § 86.*]

   Houghton and Clarke, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by the Albert Booth Cohn Company against Lucy E. Lee and another to recover broker's commissions. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued    before    INGRAHAM,    McLAUGHLIN,    CLARKE, HOUGHTON, and SCOTT, JJ.

David B. Ogden (Wm. H. L. Lee, on the brief), for appellants.

Abraham Benedict, for respondent.

INGRAHAM, J.   The plaintiff brought this action to recover commissions for the sale of certain real property in the city of New York. The defendants were residents of Rome, Italy.   The complaint alleges that the defendants employed the plaintiff as a broker to procure a purchaser of a piece of real estate in the city of New York for the sum of $105,000; that the plaintiff produced the purchaser, and therefore duly performed all the conditions of employment on his part; and that the defendants conveyed the property to the said purchaser so procured for the sum of $105,000, on which the plaintiff was entitled to $1,050 commissions.   Mr. William H. L. Lee, an attorney at law, was called as a witness for the plaintiff, and testified that he had represented the defendants in some legal business; that a Mr. Cohn called at his office in April, 1906, in relation to the sale of this real property owned by the defendants; that the witness had received a letter from one of the defendants, which stated that the writer and her sister (the other defendant) did not quite agree about the sale of the Thirty-Fifth street house, but that if the witness would sell it for $105,000 the defendants would be content; that the witness read the part of it in relation to this house to Mr. Cohn; that the witness did not say to Cohn that the defendants would accept that price; that there were a dozen brokers who were endeavoring to procure a purchaser for the property; that subsequently Mr. Cohn produced as a purchaser a Mr. Avery; that the witness told Mr. Cohn and Mr. Avery that he had no power of attorney to sell the property when Mr. Avery offered $105,000 for it, whereupon the witness sent a cable to one of the defendants at Rome, informing her of the offer of $105,000 for the Thirty-Fifth street house, subject to a lease, 70 per cent. mortgage at 5 per cent., and the remainder cash; that after sending this cable the witness went out of town, and during his absence an answer to this cable was received at his office, signed by the defendant Lee, stating, "If parties responsible and no mortgage tax, accept"; that on the following day (April 29th) there was received at Mr. Lee's office in New York another cable which said: "Refuse offer Lucy Ward wire offer hundred fifteen please consult together."   On Mr. Lee's return to his office on Monday, April 30th, he found these two cables, and in compliance with the second cable Mr. Lee informed Cohn and his clients that the deal was off and that the defendants would not convey to them; and this seems to have been the end of the transaction so far as Cohn was·concerned. Subsequently Avery tendered to Mr. Lee a check for $5,000 on account of the transaction; but Mr. Lee said he had no authority to receive it, and declined to do so.   Avery then offered to pay the whole of the purchase price ($105,000) in cash, which Mr. Lee declined to accept. Subsequently Avery brought a suit in the Supreme Court against the defendants for the specific performance of an alleged agreement for the sale of this property, represented by these letters, conversations,

and cables. Another person, named De Witt, also commenced an action for the specific performance of an agreement which he claimed he had in relation to the purchase of this property, these two suits proceeding until some time in January, 1908, when Avery undertook to procure a settlement of the De Witt suit, and in consideration of that settlement the defendants conveyed to him the property in question at the price which he originally offered for it ($105,000), and this settlement was carried out. Avery obtained a release of the De Witt claim, and the defendants conveyed the property to Avery for $105,000 in cash on the 7th of January, 1908, whereupon the plaintiff commenced this action to recover the broker's commissions for the sale of the property, and has obtained a judgment, from which the defendants appeal.

I do not think there is any evidence of an employment of the plaintiff by the defendants. The transaction in relation to the plaintiff's connection was between Mr. Lee, who had before acted as the defendants' attorney at law, but who expressly disclaimed any authority to act for them in relation to the sale of this property and upon the evidence had no such authority, and the plaintiff. One of the defendants had stated to Mr. Lee that she and her sister would be content to sell the property for $105,000, and Avery had made an offer of that sum which was cabled to one of the defendants. The defendant to whom that cable was sent replied, accepting it upon certain conditions. Before that cable was received by Mr. Lee, it was countermanded and the proposition was declined. It is quite apparent that there was no sale effected. The terms had never been agreed to. Mr. Lee was not acting as the agent of the plaintiff, nor of the purchaser, but was merely a conduit through which the offer was communicated to the defendants. There was no statement to the defendants, directly or by implication, that a broker had been employed, or that any compensation was to be paid to a broker for effecting a sale. After these defendants had been involved in these two lawsuits, two persons asking for the specific performance of alleged contracts of sale, and almost two years after the original transaction, the defendants conveyed the property to Avery, the person who had made an offer through the plaintiff; but there is no principle upon which this can be said to be a ratification of an employment by Mr. Lee for the defendants in April, 1906. Neither of the defendants, so far as appears, knew anything about a claim of the plaintiff, and, so far as appears, none had ever been made. It is not claimed that the plaintiff had any connection with the transaction after the rejection of Avery's offer on April 30, 1906, and the plaintiff had nothing to do with the settlement of the lawsuits in January, 1908, which involved considerable negotiations, and which was finally carried out by the conveyance of the property to Avery. The settlement of these litigations and the conveyance of the property in pursuance of them cannot at all relate back to the original transaction through which Avery first became interested in the property. There was thus no employment of the plaintiff by the defendants; no agreement to pay it any compensation for procuring a purchaser of the property; no services rendered to the defendants of

which they had knowledge and which they accepted. Under these circumstances, I do not see how there can be any liability to the plaintiff. The sole service that the plaintiff rendered was the voluntary production of a purchaser, who made a bid for this property, which, upon being communicated to the defendants, was rejected, and after that the plaintiff had nothing further to do with the transaction. The fact that the purchaser at first presented by the plaintiff, by tying up the property by an action and a lis pendens, involved the defendants in litigation with another person, who had also made a claim to be entitled to a conveyance of the property, and was enabled subsequently to obtain a conveyance of the property for the amount originally offered, could not impose a liability upon the defendants for alleged services which were not rendered on their employment and of which they had no knowledge.

I think, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

McLAUGHLIN and SCOTT, JJ., concur.

HOUGHTON, J. I dissent. The defendants owned considerable real property in the city of New York, and prior to the transaction in controversy had sold various parcels, and knew that it was customary to pay brokers a commission for making sales. In her letter of April 6th the defendant Lee speaks of payment of broker's and other fees. Plaintiff's witness William H. L. Lee not only attended to the general legal business of the defendants, but he had previously communicated with them respecting proposed sales of their property, and drew the contracts therefor, and advised them as to the advisability of selling whenever a sale was contemplated. In the present instance he did only what he had previously done as to other parcels. There is no dispute that the plaintiff procured the purchaser to whom the property was ultimately conveyed for $105,000 in cash. The plaintiff brought the purchaser to Mr. Lee, and on the 27th day of April, 1906, he wrote to the plaintiff a letter in which he stated that so far as he had authority to do so he considered the property sold to the plaintiff's client, Mr. Avery, and that he had no doubt, from recent correspondence with the defendants, that the transaction would be approved, and that he would immediately cable them for confirmation, which he did, telling them the price and terms. On the morning of the next day a cablegram was received by him from the defendants (through one of them) saying, "if party responsible and no mortgage tax, accept." On the next day he received another cablegram, directing him to refuse offer because Lucy Ward had wired that there had been an offer of $10,000 more, and asking Mr. Lee to consult with her. Complications subsequently arose because of this alleged offer of $10,000 more, and the defendants found themselves involved in two lawsuits for specific performance and damages, one by Avery and one by the man who claimed to have made the higher offer. The defendants extricated themselves from this dilemma as well as they could, and finally deeded the

property to Mr. Avery for $105,000 in cash, the exact amount originally agreed upon.

The defendants lay stress upon the fact that the plaintiff, the broker, did not bring about the settlement of this litigation, but that it was done by Mr. Avery, the client. The plaintiff was not obliged to bring about an adjustment of any difficulties respecting conveyance of the property which the defendants had brought upon themselves by their own acts. If the plaintiff found a purchaser for the property at the defendant's price, as it is conceded the plaintiff did, and if that purchaser was so willing and able and eager to consummate the purchase as to help settle the litigation against the defendants, it was the good fortune of the defendants and of no concern to the plaintiff. Confessedly Mr. Lee had charge of the defendants' property, at least to a limited extent, because he looked after all the leases, drew all their contracts of sale, and advised them with respect to leasing and selling. That he did not have actual authority to make a contract with a broker, or power to bind the defendants by a contract of sale, is of no importance. The plaintiff brought the purchaser to him, who made an offer to purchase, which offer was communicated to the defendants and accepted by them. That they withdrew the acceptance afterwards neither exonerated them nor deprived the plaintiff of his compensation as broker; for they subsequently deeded to the plaintiff's client and received the exact price which they originally agreed to take. This subsequent deeding to plaintiff's client was not only a confession by the defendants that they had been wrong in refusing to do so in the beginning, but was likewise a confession that the plaintiff procured the purchaser of whom neither Mr. Lee nor the defendants had ever heard until the plaintiff brought him to Mr. Lee's office. The defendants well understood that if the property was sold a broker's commission must be paid. Indeed, in the letter to Mr. Lee prior to his sending the cablegram containing Avery's offer, the defendant Lee said that she would be content to receive $100,000 clear for the property after payment of broker's and other fees, but hoped it might be made $105,000 instead.

If a broker has any rights, and can ever maintain an action to recover commissions for the sale of real estate, this plaintiff proved facts entitling him to the judgment obtained, and it should be affirmed.

CLARKE, J., concurs.